IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BYBIT TECHNOLOGY LIMITED,**

                Plaintiff,

    v.

**DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA; DPRK RECONNAISSANCE GENERAL BUREAU; LAZARUS GROUP; and JOHN DOES 1-20,**

                Defendants.

Civil Action No. 1:26-cv-02173 (JDB)

**PLAINTIFF'S STATUS REPORT**

Bybit Technology Limited ("Bybit") submits this status report pursuant to the Court's June 30, 2026 Order. ECF No. 18. This status report updates the Court on three matters: (1) Bybit's efforts to notify third-party cryptocurrency exchanges of the Temporary Restraining Order ("TRO"); (2) the status of account freezes; and (3) Bybit's discovery requests to identify the Doe defendants.

**I. BACKGROUND**

On June 19, 2026, the Court entered a TRO requiring the freezing of assets held in the cryptocurrency wallets identified in Exhibit A to Bybit's June 18 TRO filing. The Court extended the TRO on June 30, 2026; it now expires on July 16, 2026 at 5:00 p.m. ET. Since entry of the TRO, Bybit has moved promptly to notify the relevant cryptocurrency exchanges and custodians

**RECEIVED**

JUL 13 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

identified in Exhibit A, to effectuate account freezes, and to serve the discovery requests needed to identify the anonymous Doe defendants.

## II. STATUS OF OUTREACH TO EXCHANGES

Since the TRO was entered, Bybit has contacted all but two of the cryptocurrency exchanges and custodians identified in Exhibit A to provide notice of the TRO and to work toward effectuating account freezes and serving the applicable discovery requests. The following summarizes the status of those efforts.

### A. Exchanges or Entities That Have Implemented Account Freezes

The following 14 exchanges have implemented account freezes[1]:

| Exchange | Approx. Amount Frozen |
| --- | --- |
| Bitget | $353,476 |
| BitMart | $1,137,000 |
| ChangeNOW | $55,198 |
| Circle | $626,782 |
| Coinbase | $482,908 |
| Crypto.com | $17,305 |
| Gate.io | $976,103 |
| MaskEx | $241,357.65[2] |
| MEXC | $132,847 |
| N. Exchange | $91,222 |
| OKX | $1,690,710 |
| Quickex | $15,664 |
| Shakepay | $2,806 |
| SwapKit | $176,658 |

Bybit has also worked to notify the relevant account holders of the TRO. Bybit asked each cooperating exchange, by July 6, 2026 or as soon as practicable for the exchanges who responded to Bybit after July 6, to notify the relevant account holders of the TRO and the schedule set by the Court's June 30, 2026 Order. Notice through this channel satisfies due process, as it is "reasonably calculated, under all the circumstances, to apprise [the account holders] of the pendency of [these proceedings]." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see* Fed. R. Civ. P. 65(a). This Court has already recognized that formal service, while sufficient, "may not be necessary" to provide notice. Order 2 n.1, ECF No. 18 (June 30, 2026); *see* Fed. R. Civ. P. 65(d)(2) (a restraining order binds those "who receive actual notice of it by personal service or otherwise").

Courts have approved notice to unknown account holders through the custodian holding the frozen assets, directing that custodian to forward the order to the account holders. *See Doosan Bobcat N. Am., Inc. v. John Doe 1*, No. 1:24-cv-00152, ECF No. 10 (D.N.D. Aug. 14, 2024) (ex parte order freezing accounts and directing the custodian banks, upon receipt of the order, to notify the unknown account holders and provide them a copy of the order). Courts also permit service through a third party whose relationship to the defendant makes it reasonably likely that notice will reach the defendant. *See Dalrada Fin. Corp. v. Sojaad Diagnostics*, LLC, No. 3:23-cv-01183, ECF No. 8 (S.D. Cal. Feb. 16, 2024) (substituted service on the defendant's mother-in-law); *Matter of Marriage of Boyd*, 131 Or. App. 194, 884 P.2d 556 (1994) (service on the defendant's bookkeeper, who managed his personal financial affairs); *Krakow v. Bissell*, No. 2:25-cv-01020, ECF No. 6 (D. Nev. Aug. 28, 2025) (alternative service including on the defendant's employer);

---

[1] Bybit is working cooperatively with one additional exchange, Chainflip, to understand the status of the funds in Chainflip's control.

[2] MaskEx represented to Bybit that one of the two wallet addresses is no longer associated with MaskEx; MaskEx has thus frozen one of the wallets.

*SEC v. Taller*, No. 25-cv-03537, ECF No. 12 (S.D.N.Y. July 7, 2025) (service on the defendant's matrimonial counsel). Here, the cooperating exchanges have a direct, ongoing account relationship with the account holders—including through Know-Your-Customer and other recordkeeping obligations—making notice through those exchanges reasonably likely to reach the account holders.[3]

Bybit also explored notifying account holders through non-fungible token ("NFT") transmissions to the frozen wallets. As the Court noted in its June 30, 2026 Order, courts have approved detailed procedures for alternative service by NFT. *See* Order 2, ECF No. 18 (citing *Legacy Invs. Holdings, LLC v. Does 1-20*, No. 25-8800, 2025 WL 2988640, at *4–5 (N.D. Cal. Oct. 23, 2025)); *see also Tyson v. Coinbase Global, Inc.*, No. 23-22066, ECF No. 13 (D.N.J. Dec. 16, 2024); *CipherBlade, LLC v. CipherBlade, LLC*, No. 23-238, 2024 WL 69164, at *3 (D. Alaska Jan. 5, 2024) (approving NFT service because the defendants' use of the external accounts made receipt of notice probable).

After exploring that option, however, Bybit concluded that a standard NFT-based notice medium poses significant risks at this stage. An NFT transmitted to a wallet is recorded on the public blockchain, so the notice it conveys is visible not only to the Doe defendant but to any observer—including threat actors aligned with the DPRK who may attempt to move assets in response, thereby defeating the purpose of Bybit's motion to seal. That risk is consistent with the concern the Court already recognized when it declined to require notice before a freeze is in place.

---

[3] Three entities—Circle, ChangeNow, and SwapKit—represented to Bybit that they do not have the ability to notify account holders or users relevant to this matter. Bybit continues to engage in conversation with these entities. Bybit intends to serve the relevant wallet addresses via non-fungible token once the matter is unsealed.

*See* ECF No. 6 at 1. Bybit therefore does not believe service through a standard NFT is viable while so many exchanges have not yet implemented freezes. *See infra* at 5–6.

## B. Exchanges or Custodians Where Full Freezes Have Not Yet Been Implemented

Bybit continues to engage with 17 remaining exchanges and custodians reflected in Exhibit A to implement full account freezes and bring them into compliance with the Court's TRO. As the Court noted in its June 19, 2026 Order, providing notice to account holders before a freeze is implemented risks irreparable injury because defendants will likely move the assets beyond the Court's reach. ECF No. 6 at 1. Bybit has therefore withheld notice to account holders at exchanges where full freezes have not been implemented.

One platform, Tether, claims it has voluntarily frozen the "vast majority" of USDT tokens in wallets identified by Bybit, in coordination with the FBI, and intends to keep those tokens frozen pending further guidance from law enforcement. Tether has declined to share details of what has been frozen versus what has not, noting that publicly available blockchain records reflect the status of each wallet. For the limited amount of USDT that has not been frozen, Tether has suggested that Bybit contact the FBI directly if it has evidence linking those funds to the hack.

As to the remainder of the assets identified by Bybit, Tether takes the position that the Order does not apply to it because it is a Salvadoran company and is "not in active concert or participation with North Korea." Tether has also stated that the Order and the Rule 45 subpoena were not properly served. Bybit served process on Tether's U.S.-based entity, Tether Holdings LLC, in person on July 1, 2026. Tether acknowledges that it has the technical ability to freeze

approximately $27 million of funds traceable to the hack but has declined to do so based on its reading of the Order.

## III. NEXT STEPS

Because notice is complete as to some account holders but still being perfected as to others, Bybit respectfully requests that the Court enter a preliminary injunction that takes effect as to each account holder upon delivery of notice forwarded by the cooperating exchanges and after the account holder has had an opportunity to be heard. Thus, the preliminary injunction would immediately take effect as to account holders in connection with the following exchanges or entities referenced in Section II.A—Bitget, BitMart, Coinbase, Crypto.com, Gate.io, MaskEx, MEXC, N. Exchange, OKX, Quickex, and Shakepay, and take effect as to other account holders after (i) freezes have been implemented by the corresponding exchanges, and (ii) the respective account holders have received notice through the exchanges (or other means) and been presented with an opportunity to be heard.

Because the preliminary injunction cannot take effect without first notifying the defendants, a temporary restraining order remains necessary to ensure the assets are frozen before any Doe defendants are notified. Bybit will continue to work with the remaining exchanges and custodians to implement full freezes and notify the associated account holders until notice has been delivered to all wallet holders. As Bybit expects the TRO will expire before all remaining exchanges implement full freezes, Bybit will also move for a renewed TRO limited to accounts within Exhibit A that remain unfrozen on those respective exchanges. Such an order would not extend the existing TRO; it would be a new order with its own duration. This approach would not have the practical effect of encumbering assets longer than the Federal Rules allow. Despite Bybit's diligent efforts, the remaining exchanges have not implemented full freezes, and the TRO has not

restrained those account holders' assets to date. A renewed TRO as to those accounts would therefore impose no new burden on any account holder; it would simply preserve a status quo that the exchanges' own non-compliance has left unprotected.

Other courts facing similar circumstances have granted comparable relief. *See, e.g.*, *Song v. Defendant 1*, No. 6:24-cv-809, ECF No. 27 (M.D. Fla. Aug. 26, 2024) (extending TRO to allow additional time to serve Doe defendants); *id.*, ECF Nos. 36, 41, 48, 54, 58, 60, 62, 64, 70, 72, 74 (granting eleven further extensions on the same ground, through January 30, 2025, while third-party subpoena compliance from cryptocurrency exchanges remained pending); *Yang v. Shenzhen Hongfangrui Tech. Co.*, No. 23-cv-13001, ECF No. 11 (E.D. Mich. Dec. 26, 2023) (extending TRO until unserved foreign defendants could be served, reasoning that a contrary rule "would reward defendants who are able to evade proper service and undermine the authority of the courts"); *Samsung Elecs. Co. v. Early Bird Sav.*, No. 13-cv-3105, 2014 WL 324558, at *2 (S.D. Cal. Jan. 27, 2014) (extending TRO four months where "the only proper means of serving defendants available to plaintiff cannot be completed within the usual deadlines").

*Doosan Bobcat North America, Inc. v. John Doe 1* is particularly instructive. There, the plaintiff—a victim of a fraudulent-wire scheme who did not know the identities of the account holders holding its diverted funds—obtained an ex parte TRO freezing those accounts and directing the custodian banks, upon receipt of the order, to notify the unknown account holders and provide them a copy of the order. No. 1:24-cv-00152, ECF No. 10, ¶¶ 2, 5 (D.N.D. Aug. 14, 2024). The order took effect as to each enjoined party and non-party only "upon delivery of notice … by service of process or other method reasonably calculated to give notice." *Id.* ¶ 5. The court later extended that order and, once the account holders had been identified and notified, converted it into a preliminary injunction which was likewise effective "upon delivery of notice of the

Order…by service of process or other method reasonably calculated to give notice"—the same process Bybit has proposed here. *Id.*, ECF Nos. 16, 23 (Aug. 26 & Sept. 9, 2024).

In any event, any temporarily restrained or preliminarily enjoined account holder may appear and move to modify or dissolve the order as to its accounts—on two days' notice in the case of a TRO, *see* Fed. R. Civ. P. 65(b)(4), or by opposition or motion in the case of a preliminary injunction. Every affected party thus retains a prompt opportunity to be heard. If Bybit learns that a defendant wishes to appear and object, Bybit will promptly notify the Court and propose an appropriate process—including, if necessary, a schedule for further proceedings—to resolve that defendant's objections.

Dated: July 13, 2026

Respectfully submitted,

*Travis LeBlanc*

Travis LeBlanc (DC Bar # 496844)
Brian E. Nelson (DC Bar # 978426)
Carlton Forbes (DC Bar # 1656612)
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, District of Columbia 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
tleblanc@cooley.com
brian.nelson@cooley.com
cforbes@cooley.com

William K. Pao
Jonathan B. Waxman
Cooley LLP
350 South Grand Avenue, Suite 3200
Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
wpao@cooley.com
jwaxman@cooley.com

*Attorneys for Plaintiff Bybit Technology Limited*