UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BYBIT TECHNOLOGY LIMITED,

          Plaintiff,

     v.

DEMOCRATIC PEOPLE'S REPUBLIC OF
KOREA; DPRK RECONNAISSANCE
GENERAL BUREAU; LAZARUS GROUP;
and JOHN DOES 1-20,

          Defendants.

Case No. 26-2173 (JDB)

**PLAINTIFF BYBIT TECHNOLOGY LIMITED'S
MOTION FOR A RENEWED TEMPORARY RESTRAINING ORDER**

Plaintiff Bybit Technology Limited ("Bybit") respectfully requests, pursuant to Rule 65 of the Federal Rules of Civil Procedure, that this Court enter without notice to Defendants John Does 1-20 (the "Doe Defendants"), a renewed Temporary Restraining Order ("TRO") enjoining the Doe Defendants—and all persons acting in active concert or participating with them—from transferring, dissipating, concealing, converting, or otherwise disposing of the cryptocurrency assets held in wallet addresses specified in Exhibit 1. While these account holders were subject to the Court's TRO issued on June 19, 2026 (ECF No. 6) and extended on June 30, 2026 (ECF No. 18), Bybit has not yet been able to effect notice on these account holders as reflected in Bybit's July 13, 2026 Status Report. A TRO thus remains necessary as to these specific account holders for the same reasons articulated in (i) Bybit's June 18, 2026 Memorandum of Law in Support of Bybit's Motion for a TRO (ECF No. 3-1), and (ii) this Court's June 19, 2026 Memorandum Opinion Granting Bybit's TRO (ECF No. 5). In accordance with Local Civil Rule 7(a), the statement of points and authorities supporting this Motion is included herein rather than in a separate memorandum. Bybit respectfully refers the Court to its June 18 Memorandum of Law,

RECEIVED

JUL 1 4 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

along with its supporting declarations and exhibits, for the additional substantive reasons supporting this renewed TRO Request (ECF No. 3-1); those reasons have not changed. This Motion thus focuses on why Bybit's request is procedurally proper, and consistent with relief granted by other courts in similar circumstances.

Despite Bybit's diligent efforts, the remaining exchanges associated with wallets listed in Exhibit 1 have not implemented full freezes. The existing TRO has thus not restrained those account holders' assets to date. A renewed TRO as to those accounts would therefore impose no new burden on any account holder; it would simply preserve a status quo that the exchanges' own non-compliance has left unprotected.

Good cause supports renewed interim relief. Because Rule 65(a)(1) permits a preliminary injunction to issue "only on notice to the adverse party," Bybit's pending request that the Court convert the existing TRO into a preliminary injunction reaches only those Doe Defendants as to whom adequate notice has been accomplished. The Doe Defendants associated with the Exhibit 1 wallet addresses are not yet among them—not for any want of diligence, but because the exchanges holding their accounts have not yet transmitted notice to the account holders or produced identifying information in response to the Rule 45 subpoenas and notice letters Bybit has served since June 25, 2026. *See* July 13, 2026 Status Report at 5. Courts confronting this posture—in which the only impediment to Rule 65(a)(1) notice is pending third-party compliance—have held that it supplies good cause for continued interim relief: "As Rule 65(a)(1) requires notice to the adverse party before issuing a preliminary injunction, good cause exists to extend the TRO to allow Plaintiff additional time to serve Defendants." *Song v. Defendant 1*, No. 6:24-cv-809, ECF No. 27 at 1–2 (M.D. Fla. Aug. 26, 2024); *accord Costa v. Bazron*, No. 19-cv-3185 (RDM), 2020 WL 2410502, at *3 (D.D.C. May 11, 2020) ("[G]ood cause exists to extend the TRO because the parties

2

need time to brief, and the Court needs time to consider, the forthcoming motion for a preliminary injunction.").

Renewed relief is also urgent. Such freezes as to the exchanges or entities connected to the Exhibit 1 accounts are coextensive with the existing TRO and will lapse upon its expiration on July 16, 2026, at 5:00 p.m. Unless a renewed TRO issues, that expiration will leave the Exhibit 1 assets wholly unrestrained—free to be dissipated by actors whose demonstrated practice is to launder stolen cryptocurrency beyond the reach of any court—and the harms detailed in Bybit's June 18 Memorandum of Law will follow unchecked.

Other courts facing similar circumstances have granted comparable relief. *See, e.g., Song v. Defendant 1*, No. 6:24-cv-809, ECF No. 27 (M.D. Fla. Aug. 26, 2024) (extending TRO to allow additional time to serve Doe defendants); *id.*, ECF Nos. 36, 41, 48, 54, 58, 60, 62, 64, 70, 72, 74 (granting eleven further extensions on the same ground, through January 30, 2025, while third-party subpoena compliance from cryptocurrency exchanges remained pending); *id.*, ECF No. 79 (renewed motion for a temporary restraining order, filed after the prior order had lapsed and incorporating by reference the memorandum supporting the original TRO), *granted*, ECF No. 84 (May 21, 2025) (re-examining the Rule 65(b) factors and entering a renewed TRO with a fresh fourteen-day term); *Yang v. Shenzhen Hongfangrui Tech. Co.*, No. 23-cv-13001, ECF No. 11 (E.D. Mich. Dec. 26, 2023) (extending TRO until unserved foreign defendants could be served, reasoning that a contrary rule "would reward defendants who are able to evade proper service and undermine the authority of the courts"); *Samsung Elecs. Co. v. Early Bird Sav.*, No. 13-cv-3105, 2014 WL 324558, at *2 (S.D. Cal. Jan. 27, 2014) (extending TRO four months where "the only

3

proper means of serving defendants available to plaintiff cannot be completed within the usual deadlines").

*Doosan Bobcat North America, Inc. v. John Doe 1* is particularly instructive. There, the plaintiff—a victim of a fraudulent-wire scheme who did not know the identities of the account holders holding its diverted funds—obtained an ex parte TRO freezing those accounts and directing the custodian banks, upon receipt of the order, to notify the unknown account holders and provide them a copy of the order. No. 1:24-cv-00152, ECF No. 10 at 11–12 (D.N.D. Aug. 14, 2024). The order took effect as to each enjoined party and non-party only "upon delivery of notice … by service of process or other method reasonably calculated to give notice." *Id.* at 12. The Court later extended that order for good cause under Rule 65(b)(2) because the plaintiff needed "additional time to receive documentation from the banks subject to the TRO," *see* ECF No. 16 at 1, and, once the account holders had been identified and notified, converted it into a preliminary injunction which was likewise effective "upon delivery of notice of the Order…by service of process or other method reasonably calculated to give notice"—the same process Bybit has proposed here. *Id.*, ECF No. 23 at 12 (Sept. 9, 2024).

This structure also respects the limits on ex parte relief. Ex parte restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer," *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438–39 (1974), and in this District twenty-eight days is ordinarily "the outer limit for the time that a TRO can remain in place" absent the restrained party's consent, *Costa v. Bazron*, 2020 WL 2410502, at *4. A renewed TRO effective only upon notice honors both principles rather than evading them. It is a new order, not a serial extension of an existing ex parte restraint. By its terms, it restrains no

4

account holder before that account holder receives notice. And from the moment it takes effect as to any account holder, that account holder may move to dissolve or modify it on two days' notice, *see* Fed. R. Civ. P. 65(b)(4), and will be folded into preliminary-injunction proceedings conducted on notice under Rule 65(a)(1). The time limits of Rule 65(b) protect parties restrained without an opportunity to be heard; they are not offended by an order that restrains no one who has not received both notice and an immediate avenue to be heard.

In any event, any temporarily restrained account holder may appear and move to modify or dissolve the order as to its accounts. If Bybit learns that a defendant wishes to appear and object, Bybit will promptly notify the Court and propose an appropriate process—including, if necessary, a schedule for further proceedings—to resolve that defendant's objections. This emergency relief remains necessary to preserve Bybit's ability to recover the stolen cryptocurrency assets. A proposed order is attached.

Dated: July 14, 2026

Respectfully submitted,

Travis LeBlanc (DC Bar # 496844)
Brian E. Nelson (DC Bar # 978426)
(*Pro Hac Vice Forthcoming*)
Carlton Forbes (DC Bar # 1656612)
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, District of Columbia 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: tleblanc@cooley.com
Email: brian.nelson@cooley.com
Email: cforbes@cooley.com

William K. Pao (*Pro Hac Vice Forthcoming*)
Jonathan B. Waxman (*Pro Hac Vice Forthcoming*)
Cooley LLP
350 South Grand Avenue, Suite 3200

5

Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
Email: wpao@cooley.com
Email: jwaxman@cooley.com

*Attorneys for Plaintiff Bybit Technology Limited*