**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BYBIT TECHNOLOGY LIMITED,** <br> **Plaintiff,** <br><br> v. <br><br> **DEMOCRATIC PEOPLE'S REPUBLIC** <br> **OF KOREA, et al.,** <br> **Defendants.** | |

**Civil Action No. 26-2173 (JDB)**

**UNDER SEAL**

## <u>ORDER</u>

Before the Court now is Bybit's motion for a renewed temporary restraining order (TRO). Because good cause supports extending the current TRO, the Court will do so for another 14 days, but is unlikely to grant any further extension absent extraordinary circumstances.

Following the Court's initial TRO and extension thereof, the Court understands that approximately $6.2 million of crypto assets has been frozen pursuant to the Court's order but that roughly $31 million has not been.  See Pl.'s Second Status Report at 4-5, Dkt. 23.  Of the non-frozen $31 million, around $27 million is held in wallets at the crypto exchange Tether.  Id. at 5. Tether has told Bybit that it is not covered by the Court's order because it is not subject to U.S. jurisdiction as a Salvadorean company, it is not in "active concert and participation" with the Doe defendants, and service was not properly effectuated.  See Pl.'s First Status Report at 5, Dkt. 20; Fed. R. Civ. P. 65(d)(2)(C) (TRO binds persons in active concert or participation with bound parties).

However, Tether also represented that it has voluntarily frozen the "vast majority" of assets in relevant wallets—about $27 million—in coordination with the FBI.  Id.  At least some of the $4

million not frozen despite the Court's order and held at exchanges besides Tether has also been voluntarily frozen by the relevant exchange. Pl.'s Second Status Report at 5. For the frozen $6.2 million, account holders controlling wallets containing around $2.1 million have received notice of this case from either the exchange custodian or Bybit. Id. at 2-5.[1] One account holder controlling a wallet holding almost $40,000 intends to challenge the TRO, and Bybit is conducting due diligence to decide whether to oppose that challenge or dismiss that individual from the scope of requested relief. Id. at 3-4. Bybit intends to serve the relevant wallet addresses at exchanges that have implemented freezes but cannot or will not notify account holders by non-fungible token after the matter is unsealed. Id. at 3.

Turning to Bybit's motion, the Court first observes that the same considerations that justified its first extension of the TRO remain true here. See Order Extending TRO at 1, Dkt. 18. Specifically, Bybit continues its good faith efforts to provide notice to the Doe defendants but has not yet succeeded in noticing account holders who control the majority of the assets at issue here. Its efforts to provide notice are particularly challenging because the Does are anonymous and because several custodians with access to account holder identifying information or means of providing notice to account holders are not cooperating with Bybit. Indeed, over 80 percent of the assets at issue remain unfrozen because the relevant exchanges do not consider themselves subject to the Court's order restraining both the Doe defendants and anyone "in active concert or participation" therewith. See Order Granting TRO, Dkt. 6.

That said, in at least the Seventh Circuit "28 days is the outer limit for a TRO without the consent of the enjoined party." H-D Michigan, LLC v. Hellenic Duty Free Shops S.A., 694 F.3d

---

[1] This subtotal includes the value of accounts held at BitMart ($1,136,204), Coinbase ($518,548), Crypto.com ($18,629), MaskEx ($259,824), MEXC ($134,004), Nexo.io ($41,208), and Quickex ($16, 863). Id.

827, 844 (7th Cir. 2012), cited by Costa v. Bazron, Civ. A. No. 19-3185, 2020 WL 2410502, at *4 (D.D.C. May 11, 2020); see also Fed. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."). And the D.C. Circuit has said that an order extending a TRO beyond the period expressly allowed under the Federal Rules (then 20 days, now 28 days) is "tantamount to the grant of a preliminary injunction." Nat'l Mediation Bd. v. Air Line Pilots Ass'n Int'l, 323 F.2d 305, 305 (D.C. Cir. 1963) (per curiam). Of course, a preliminary injunction requires notice to the adverse party, Fed. R. Civ. P. 65(a), and here only account holders controlling a fraction of the assets at issue have received notice.

Bybit argues that the Court ought not to be troubled by this temporal cap on TROs because this is a "renewed TRO" or a "new order, not a serial extension of an existing ex parte restraint." Mot. for Renewed TRO at 4, Dkt. 21. That is so, in Bybit's view, because the account holders who did not receive notice were not restrained by the original or extended TRO. Id. at 4-5. However, the Court is unconvinced. Whether or not Doe defendants received notice, they remained subject to the Court's order. Indeed, the Seventh Circuit in H-D Michigan reasoned that its bright line 28-day rule applied a fortiori where there was no notice to the enjoined party. See 694 F.3d at 844. Thus, the Court declines to endorse Bybit's proposed end-run around the limitations on a TRO by recharacterizing an extension as a new TRO.

Nevertheless, under D.C. Circuit precedent this Court sees a distinction between appealability and authority to extend a TRO. Any TRO that extends beyond 28 days is appealable as "tantamount" to a preliminary injunction, Nat'l Mediation Bd., 323 F.2d at 305, but that does not necessarily mean that such an extension is impermissible without the notice required for preliminary injunctions. This stands to reason because a TRO is by definition time limited whereas

a preliminary injunction typically remains in place during the pendency of the litigation, reinforcing the importance of notice in the latter instance. Moreover, this case presents unique difficulties of providing notice to anonymous defendants maintaining allegedly stolen funds at primarily offshore exchanges. And as Bybit points out, several courts have extended TROs in similar circumstances. See Mot. at 3-4. Accordingly, although the Court construes Bybit's motion as one to extend the existing TRO rather than grant a new TRO, it has authority to consider it.

Notwithstanding the foregoing, the Court expresses some reservation as to the issue of irreparable harm based on the current facts. As emphasized in the Court's TRO opinion, "the speed with which cryptocurrency moves, the anonymous nature of the Doe defendants, and the apparent efforts to launder and put out of reach the stolen funds creates a significant risk of irreparable dissipation absent preliminary relief." Mem. Op., Dkt. 5. But as things stand, almost 90 percent of the funds not frozen despite the Court's order has been voluntarily frozen by Tether at the FBI's request. And there is no indication that Tether's voluntary freeze will imminently be lifted. Nor has Bybit reported that in the last 27 days the Doe defendants have moved any of the funds that have not even been voluntarily frozen. If these funds continue to sit unmoved, including since some Doe defendants have received notice of this suit, the imminence of harm diminishes. In part for this reason, as well as because in the vast majority of cases 28 days is the outer bound for a TRO, the Court is unlikely to grant a further extension absent extraordinary circumstances.

Finally, the Court observes that account holders who have received notice of this action have been provided with the complaint and initial TRO but not with the order extending the TRO and agreeing to construe the motion for a TRO as a motion for a preliminary injunction. See Order Extending TRO at 2. Hence, noticed account holders may be aware of this action generally but not of the pending motion for a preliminary injunction.

4

\* \* \*

Upon consideration of [21] plaintiff's motion for a renewed TRO and the entire record herein, it is hereby **ORDERED** that the motion is **GRANTED**.  It is further **ORDERED** that:

- The temporary restraining order first entered on June 19, 2026, at 5:00pm ET is extended by a further 14 days and shall expire on July 30, 2026, at 5:00pm ET;

- Plaintiff shall provide notice of this action, through the custodians or otherwise—including copies of the complaint, the initial TRO opinion and order, the order extending the TRO and construing the TRO motion as a preliminary injunction motion, and this order—to the Doe defendants by not later than July 20, 2026;

- Any noticed Doe defendant shall appear and file any opposition to the preliminary injunction motion by not later than July 24, 2026; and

- Plaintiff shall file any reply, or a status report on efforts to provide notice to and serve the remaining Doe defendants, by not later than July 27, 2026.

    **SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Date: <u>July 16, 2026</u>

5