**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BYBIT TECHNOLOGY LIMITED, | |
| Plaintiff, | Case No. 26-2173 (JDB) |
| v. | |
| DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA; DPRK RECONNAISSANCE GENERAL BUREAU; LAZARUS GROUP; and JOHN DOES 1-20, | |
| Defendants. | |

**DECLARATION OF JEREMY SHERIDAN IN SUPPORT OF PLAINTIFF BYBIT
TECHNOLOGY LIMITED'S STATUS REPORT**

I, Jeremy Sheridan, declare as follows:

1.      I am a Managing Director of the Blockchain and Digital Assets practice at FTI Consulting Technology LLC ("FTI"). FTI is an international consulting firm that provides blockchain advisory services, cryptocurrency investigations, digital forensic investigations, data governance, privacy and security services, and electronic discovery services to assist organizations across a variety of industries to better govern, secure, find, and analyze information.

2.      I submit this declaration (the "Declaration") in support of the July 27, 2026 Status Report filed by Plaintiff Bybit Technology Limited ("Bybit") pursuant to the Court's July 16, 2026 Order (the "Order"), ECF No. 25. This Declaration addresses the manner in which FTI provided notice to relevant account holders via non-fungible token ("NFT") of the following case materials specified in the Court's Order: the Complaint, ECF No. 1, June 19, 2026 TRO Opinion and Order, ECF Nos. 5 and 6, the June 30, 2026 Order extending the TRO and construing the TRO motion as a preliminary injunction motion, ECF No. 18, and the July 16, 2026 Order, ECF No. 25.

3.      This Declaration is organized in two parts. First, I provide a brief description of my professional background and experience. Second, I describe the NFT notice process we employed in this matter. Except as otherwise indicated, all facts set forth herein are based on my personal knowledge and on documents and information available to me based on my work with Bybit's counsel at Cooley.

## I.      Professional Background and Experience

4.      I am an expert in financial crime investigations involving digital assets, cryptocurrencies, blockchains, and smart contracts. I support all FTI's cryptocurrency workstreams, with a focus on digital asset investigations. I have spearheaded numerous investigations into the misappropriation and theft of digital assets and conducted intelligence gathering on malicious actors in the blockchain space. I provide clients with deep expertise in investigative approaches and technologies, including advanced blockchain analytics and artificial intelligence, and regularly serve as an expert witness in complex cases.

5.      Before joining FTI, I served as Vice President of Regulatory Affairs at Prime Trust, a financial infrastructure company, where I led regulatory compliance for digital asset companies.

6.      Before my private sector career, I served for nearly 25 years as a Special Agent with the United States Secret Service, retiring at the Senior Executive Service (SES) level as Assistant Director of the Office of Investigations. In that role, I provided executive leadership over global field office operations and all Secret Service investigative duties, securing the United States' financial infrastructure. I also served as Assistant Director of the Office of Intergovernmental and Legislative Affairs, where I acted as the legislative advisor to the Director of the Secret Service, and as Special Agent in Charge of the Vice Presidential Division, where I provided safety and security as the lead agent for the Vice President and Secretary of Homeland

Security. As a Special Agent, I conducted over 60 federal and state financial and cybercrime investigations, resulting in 37 arrests and a 100% conviction rate.

7.    I have served as a testifying expert in U.S. congressional hearings and in precedent-setting cases heard by numerous courts around the world, including as an expert witness in a cryptocurrency valuation case in the Singapore International Commercial Court—reportedly the first-ever in that country related to valuation, in which the presiding judge's opinion drew directly on my expert report.

8.    I am a member of the Association of Certified Anti-Money Laundering Specialists ("ACAMS"), which is the largest membership organization dedicated to enhancing the knowledge and skills of financial crime detection and prevention worldwide. I have completed course work and passed the required examinations administered by ACAMS to be certified as a Cryptoasset Anti-Financial Crimes Specialist. I am a member of the Blockchain Council, an organization that provides training and certification in technical specialties. Through the Blockchain Council, I have been designated as a Certified Cryptocurrency Expert. I have been trained by blockchain analytics firm Chainalysis as a cryptocurrency investigator and have achieved the designation of an Investigation Specialist.

9.    I hold a B.S. in Criminal Justice Administration and an M.P.A. in Criminal Justice, Law Enforcement Administration, both from the University of Arizona.

## II.    Procedures for NFT Notice

10.    FTI was engaged to effect service via NFTs on the Doe Defendants identifiable only by the blockchain wallet addresses into which cryptocurrency traceable to the Bybit hack has been deposited.

11.     An NFT is a unique cryptographic token that exists on a blockchain and cannot be replicated. NFTs may contain customizable information encoded by the sender, including images or text. Even where the names and other forms of contact information for account holders are unknown, NFTs can be sent to recipient wallets via blockchain so long as their addresses are known. Thus, NFTs make it possible to interact with those addresses and serve documents on their owners through the applicable blockchain networks. This is a process that FTI has engaged in previously, including in an adversary proceeding arising out of the *In re Celsius Network, LLC* bankruptcy, *Meghji v. Wallet Owner 0x10F546A6F4D20D91E5A85061243847590C9F4BC79, et al.*, Adv. Pro. No. 24-03994 (MG), *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. 2024).

12.     Counsel for Bybit provided FTI with a list of wallet addresses for delivery of the NFTs (the "Doe Defendant Wallets").[1] These public wallet addresses are pseudo-anonymous identifiers used to receive cryptocurrency; the corresponding private key is how a user proves ownership and maintains control over the digital assets belonging to that address. Private keys are generated when a cryptocurrency wallet address is created, are random alpha-numeric codes, and cannot be changed. It is extremely rare to share a private key, as doing so would relinquish control of the address and its assets. Due to this risk, a wallet owner is typically the only person who knows the private key.

13.     At my direction, FTI created a series of NFTs for delivery to the Doe Defendant Wallets by July 20, 2026. These NFTs were configured to be delivered across several blockchain

---

[1] This list, attached hereto as Exhibit 1, is the same as Dkt. 3-3, with two minor differences: (1) one of the third-party exchanges, Swapkit, provided Bybit an updated list of wallet addresses to use for the relevant account holders, which FTI used here, and (2) wallet addresses associated with exchanges that Bybit is no longer pursuing were also removed. *See* July 13 Status Report, ECF No. 20 at 2. Exhibit 1 also contains a column titled "Network," which identifies the blockchain network associated with each address.

networks on which the wallets are hosted: Ethereum, Bitcoin, Solana, and Tron. FTI minted each of these NFTs with text informing the recipient that a temporary restraining order in Sealed Case No. 1:26-cv-02173-JDB (D.D.C.) applies to their account and that they have until July 24, 2026 to file an opposition. The NFTs further directed the recipients to review case documents at a linked website hosted on Netlify, a web development platform, https://notice-of-legal-proceedings.netlify.app/docs/, which contain the following materials: the Complaint, ECF No. 1, June 19, 2026 TRO Opinion and Order, ECF Nos. 5 and 6, the June 30, 2026 Order extending the TRO and construing the TRO motion as a preliminary injunction motion, ECF No. 18, and the July 16, 2026 Order, ECF No. 25. These materials are accessible to any NFT recipient.

14.    For Ethereum wallet addresses (as reflected in Exhibit 1), FTI developed a smart contract deployed on the Ethereum blockchain. A smart contract is computer code that automatically executes specified functions when predefined conditions are met. This contract used the ERC-721 standard to mint, or create, an NFT with specific metadata published to recipient wallets on the Ethereum network.[2]

15.    FTI developed a smart contract deployed on the Tron blockchain using similar protocols to create and deliver NFTs to recipient addresses on the Tron network.

16.    FTI utilized a Token Metadata program on the Solana blockchain to create and deliver NFTs to recipient addresses on the Solana network.

17.    For Bitcoin wallet addresses (as reflected on Exhibit 1), FTI used the OP_RETURN protocol, a Bitcoin script designed to embed small amounts of data directly into the blockchain. Using this protocol, FTI sent negligible amounts of bitcoin—commonly referred to as "dust" transactions—to the recipient wallets. These transactions were rendered immediately unspendable

---

[2] ERC-721 is an Ethereum blockchain standard that governs non-fungible tokens (NFTs), meaning each token created under the standard is unique and individually identifiable.

by the OP_RETURN protocol and contained text message metadata with the same information that was provided in the NFT deliveries to other networks.

18.    FTI delivered NFTs and text message metadata to all the Doe Defendant Wallets between July 19 and July 20, 2026 via customized code scripts. The recipient need not take any action for the NFTs or text message metadata to be delivered to the address. FTI completed all NFT and text message metadata deliveries by July 20, 2026. This is the same process that FTI has used for notice in other cases involving Doe defendants known only by their wallet addresses.

19.    Following transmission of the NFTs, FTI prepared four delivery reports reflecting the completed transactions—one report each for the wallets associated with Ethereum, Bitcoin, Solana, and Tron, respectively. These reports, attached hereto as Exhibit 2, detail the recipient wallet address, transaction identification hash, and timestamp of each completed transaction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 27, 2026.

_Jeremy Sheridan_
Jeremy Sheridan