**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**BYBIT TECHNOLOGY LIMITED,**
    **Plaintiff,**

    **v.**

**DEMOCRATIC PEOPLE'S REPUBLIC
OF KOREA, et al.,**
    **Defendants.**

</td><td>

**Civil Action No. 26-2173 (JDB)**

**UNDER SEAL**

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

Before the Court now is Bybit's converted motion for a preliminary injunction. Because Bybit has carried its burden on the preliminary injunction factors and demonstrated that it provided the Doe defendants with notice and an opportunity to respond, the Court will grant Bybit's motion in part.

The Court initially granted a temporary restraining order (TRO) because Bybit established that it was likely to succeed on the merits and likely to suffer irreparable harm absent preliminary relief, that the balance of equities tipped in its favor, and that the public interest favored an injunction. TRO Mem. Op. at 4-5, Dkt. 5 (citing <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)). The Court then extended the TRO twice. First Extension Order, Dkt. 18; Second Extension Order, Dkt. 25.

The Court issued and extended the TRO without notice to the defendants, as permitted under the federal rules, because it was not possible to timely identify the Doe defendants and there was a risk of immediate dissipation of the stolen funds at issue in this cryptocurrency case. <u>See</u> Fed. R. Civ. P. 65(b)(1); Loc. Civ. R. 65.1(a). However, a preliminary injunction order may not

1

be issued without notice.  Fed. R. Civ. P. 65(a)(1).  Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Tr., 339 U.S. 306, 314 (1950).  Thus, to be entitled to a preliminary injunction, the movant must both satisfy the Winter factors and demonstrate that the adverse party has received notice and had an opportunity to respond.

The Court now holds that the same factors weighing in favor of a TRO support issuing a preliminary injunction.  In brief, Bybit has demonstrated a likelihood of success on the merits at least for two of its claims.  First, Bybit is likely to succeed on its Computer Fraud and Abuse Act claim because the still undisputed facts reveal that "the Doe defendants engaged in a coordinated and unauthorized intrusion into Bybit's cold-wallet authorization system, including through computers used to transact international business, deploying malicious code to fraudulently extract $1.5 billion without permission."  TRO Mem. Op. at 7.  Second, Bybit is likely to succeed on its conversion claim because the Doe defendants are exercising dominion over specific, identifiable crypto tokens to which Bybit has a right.  Id. at 7-8.  Bybit has also shown that the balance of equities tips in its favor.  The Doe defendants likely have no right to the assets and denying relief could irreparably harm Bybit through the risk of dissipation.  Id. at 9.  And the public interest favors a preliminary injunction because this massive theft "undermined the integrity of crypto markets and was carried out at the direction of a sanctioned government to fund nuclear and ballistic weapons programs."  Id.

In its latest extension of the TRO, the Court expressed some reservations as to the imminence of irreparable harm.  Second Extension Order at 4.  It did so in part because the Doe defendants that had not yet received notice of this action and whose funds had not been frozen

2

(because the exchange hosting their wallets said it would not or could not implement a freeze) had not yet moved any funds out of their wallets. Id. Also, the majority of funds at issue—$27 million out of $37 million—are held at a single crypto exchange, Tether, that does not consider itself bound by the TRO and that represented to Bybit that it had already voluntarily frozen the "vast majority" of funds in coordination with the FBI. Id. In response, Bybit highlights that over $6 million has been frozen pursuant to the Court's order and that many of the exchanges that have frozen funds under the Court's order have informed Bybit that they will release the funds absent a court order. Status Report at 9-11, Dkt. 27. Moreover, Bybit points out that all account holders have now received notice of this action by non-fungible token (NFT), as discussed below, so they have every incentive to move the money as soon as any freeze is lifted. Id. To be sure, renewed preliminary relief likely will not alter Tether's view of its obligations under the Court's orders, but the Court is satisfied that the risk of imminent and irreparable dissipation remains significant if any freeze is lifted—whether by expiration of the TRO or voluntary action by Tether. Accordingly, Bybit has carried its burden on irreparable harm as well.

The Court turns next to the issue of notice. Although Bybit initially proposed to effect notice through the crypto custodians hosting the Doe defendants' wallets, it later determined that the safer course to ensure compliance with the Court's order to provide notice was to send NFTs to each wallet at issue. Status Report at 2-5. Specifically, Bybit hired a cryptocurrency, blockchain, and digital forensics firm called FTI Consulting Technology LLC (FTI) to deliver notice through NFTs to the Doe defendants. See Decl. of Jeremy Sheridan, Dkt. 27-1. NFTs are unique cryptographic tokens that can contain customizable information encoded by the sender. Id. ¶ 11.

Bybit provided FTI with a list of the wallets at issue and FTI sent NFTs to the listed wallets by July 20, 2026.  Id. ¶¶ 12-13, 18.  The NFTs included text stating that a TRO in Sealed Case, Civ. A. No. 26-2173 (D.D.C.), applied to their account and that account holders had until July 24, 2026 to file an opposition.  Id. ¶ 13.  Both the July 20 and July 24 deadlines conform to the Court's most recent extension of the TRO.  The NFTs also directed account holders to review the following case documents, hosted on a website accessible to any NFT recipient: the complaint, the initial TRO order, the first extension order converting the TRO motion into a preliminary injunction motion, and the second extension order.  Id.  Those deadlines and listed documents conform to the Court's instructions in the second extension order.  Second Extension Order at 5.  Accordingly, the Court finds that Bybit has provided the Doe defendants with notice and a reasonable opportunity to be heard.[1]

Indeed, one account holder has moved pro se to oppose entry of a preliminary injunction as to his wallet.  Joseph F. Corrigan, an Australian citizen living in Southeast Asia, contends that he is the rightful owner of the cryptocurrency in a wallet held at the crypto exchange Nexo, and that Bybit has failed to establish its entitlement to preliminary relief as to the funds in his wallet. Corrigan Obj., Dkt. 26.  Although Bybit contests the assertions in Corrigan's objection, it concedes that the amount at issue is modest—$39,000—and that because Bybit now knows Corrigan's identity it can later name him as a defendant if it continues to believe that it has a superior right to the funds in his wallet.  Status Report at 5-8.  Bybit asserts that it "does not object to excluding" Corrigan's wallet from the scope of preliminary relief.  Id. at 7.  The Court will take Bybit up on

---

[1] In support of its argument as to the adequacy of notice, Bybit cites cases authorizing alternative service by NFT.  See Status Report at 4.  Rule 65 "requires notice; formal service of process is not a prerequisite."  D.P. by A.B. v. Mukwonago Area Sch. Dist., 140 F.4th 826, 831 (7th Cir. 2025) (citing cases).  NFTs may indeed be an adequate method of alternative service in addition to being sufficient for notice, but Bybit has not yet sought authorization from the Court for this method of alternative service.  Perfected service of process will, of course, be required before final judgment can be entered.  See Mullane, 339 U.S. at 314, 317.

that concession and will grant a preliminary injunction as to all wallets listed in Exhibit 1 to the July 27 status report except the Corrigan wallet.  See Status Report Ex. 1, Dkt. 27-2.

Finally, Bybit proposes unsealing this case in view of "the public interest in the transparent administration of judicial proceedings, particularly in a case involving state-sponsored cybercrime of this magnitude."  Status Report at 8.  However, Bybit requests that the exhibits identifying specific wallets remain under seal and that Bybit "be permitted to file redacted copies of all other filings that contain references to individual wallet addresses with assets traceable to the hack."  Id. at 8-9.  The Court will agree to that approach to balance the public interest in transparency against Bybit's interest in protecting the specific wallets at issue against any hacking attempts.

Conclusion

For the foregoing reasons, the Court will grant plaintiff's motion for a preliminary injunction in part.  A separate order will accompany this opinion.

/s/ _____<br>
JOHN D. BATES<br>
United States District Judge

Date: July 30, 2026

5